UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Anthony Barth

   v.                                            Civil No. 18-cv-1010-JD
                                                 Opinion No. 2019 DNH 090

United States of America

O R D E R

Anthony Barth, proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255. In support, he brings four claims that his counsel provided constitutionally ineffective assistance. The government has filed its response. Barth has filed a reply. An evidentiary hearing is not required, and the petition is resolved as follows. Rule 8(a), Rules Governing Section 2255 Proceedings.

Standard of Review

A petitioner is entitled to habeas relief if he shows that his sentence was imposed "in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." § 2255(a). The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). "[A] defendant who claims ineffective assistance of counsel must

prove (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that any such deficiency was prejudicial to the defense." Garza v. Idaho, 139 S. Ct. 738, 744 (2019) (internal citations and quotation marks omitted).

Background[1]

In 2016, the New Hampshire State Police and the Manchester Police were investigating the sale of heroin and fentanyl in southern New Hampshire. They identified Anthony Barth as a distributor of fentanyl. During a meeting with a confidential informant ("CI") on June 22, 2016, the investigators learned that the CI was familiar with Barth and willing to purchase drugs from him.

Police officers and the CI arranged drug transactions with Barth, which were conducted under surveillance. On July 28, the CI purchased ten "fingers" of fentanyl from Barth for $3,000.[2] The CI bought 15 fingers of fentanyl from Barth for $4,500 on

---

[1] The information about the crimes, search, and laboratory testing is taken from the presentence investigation report, which was accepted with certain changes during the sentencing hearing.

[2] The term "fingers" used in this context is understood to mean either balloons or the fingers cut from rubber gloves. See Baez-Gil v. United States, 2013 WL 2422803, at *2 (D.N.H. June 4, 2013)

2

August 3.  On August 17, Barth agreed to sell the CI 50 fingers of heroin or fentanyl in Derry, New Hampshire.

The police officers planned to arrest Barth on August 17.  They saw his car parked behind a restaurant and identified Barth.  Two marked police cars drove toward Barth's car and stopped with one car in front of Barth and the other behind him.  One officer got out of the car, drew his gun, and ordered Barth to stop.

Barth put his car into reverse and hit the police car behind him.  He then shifted into drive and drove toward the officer in front of him.  He did not hit the officer.  He drove over the median, which consisted of a small lawn, and onto an access road to Walmart.  A witness saw him leave his car, run to a dumpster, and then run into the woods.  With the witness's information, officers found 25 fingers in the dumpster and 24 fingers near the edge of the woods.

The same day officers obtained a warrant and searched Barth's home.  Barth's father, Russell Barth, and his girlfriend, Alyssa Robichaud, also lived in the house, and the officers spoke to them.  During the search, officers found marijuana, heroin, fentanyl, and an anabolic steroid.  Inside a safe, they found $47,000 and a large amount of gold, jewelry, and coins.  The appraised value of the gold, coins, and jewelry is $146,420.

The drugs purchased by the CI from Barth were tested at the New Hampshire Department of Safety Forensic Laboratory on September 15, 2016. The tests showed that Barth sold 100.1 grams of fentanyl on July 28 and 148.7 grams of fentanyl on August 3. The 49 fingers found on August 17 after Barth ran into the woods contained 492.94 grams of fentanyl. 672 grams of marijuana and 65.58 grams of fentanyl were seized during the search of Barth's home.

In a complaint filed on September 6, 2016, Barth was charged with possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), and he was arrested the same day. An indictment was filed on September 21, 2016, charging Barth with two counts of distribution of a controlled substance, fentanyl, in violation of § 841(a)(1), and one count of possession with intent to distribute a controlled substance, fentanyl, also in violation of § 841(a)(1). Barth signed an acknowledgement and waiver of rights on May 31, 2017, in which he pleaded guilty to all three counts without a plea agreement. He also acknowledged that the minimum penalty for those offenses was ten years and the maximum penalty was life in prison.

On June 5, 2017, Barth appeared and entered his guilty plea. During his plea hearing, Barth stated that he understood the maximum penalty for the charges against him was life in

4

prison and the mandatory minimum penalty was ten years in prison. Barth admitted that that he had possessed with intent to distribute more than 400 grams of fentanyl, as charged in Count 3. The defense did dispute the other quantities of drugs attributed to Barth and the cash, gold, and jewelry found in the home that was attributed to Barth.

Barth objected to the length of the sentence as it was calculated in the presentence investigation report and supported by the government in its memorandum. Before sentencing, however, the defense and the government agreed that the quantity of drugs involved in Barth's offenses equaled 10,000 to 30,000 kilograms of marijuana, resulting in a base offense level of 34. They also agreed to a 2 point enhancement for reckless endangerment based on his operation of his car to escape capture and leaving fentanyl in the area, raising the base offense level to 36, which was then reduced to 33 based on acceptance of responsibility.

Barth's counsel asked the court to consider the circumstances of the controlled buys from Barth, which he argued showed an attempt to manipulate the sentence, as a factor to support a variance from the guidelines. The government disputed that any manipulation occurred. Barth was sentenced to 168 months on each count, to be served concurrently.

## Discussion

Barth raises four ineffective assistance of counsel claims in support of his habeas petition.  He contends that his counsel was ineffective because counsel failed to object to additional offense levels based on converting the property seized from his home to drug quantities and because counsel failed to object to the enhancement for reckless endangerment.  He also alleges that his counsel was ineffective because he failed to object to the government's failure to provide impeachment and exculpatory evidence, failed to argue for a sentence below the mandatory minimum based on the government's manipulation of the scope of the crime, and failed to argue that he was entitled to an offense level reduction based on his role in the crime.[3]  In its response, the government contends, briefly, that none of Barth's claims have merit.

---

[3] In his reply, Barth states in several places that he asked his counsel to file a notice of appeal to raise the same four issues.  No appeal was filed.  Barth appears to believe that an appeal was necessary to avoid procedural default, which is not an issue here.  Further, ineffective assistance of counsel claims cannot be raised on direct appeal except in limited circumstances that do no apply here. United States v. Flete-Garcia, --- F.3d ---, 2019 WL 2223130, at *17 (1st Cir. May 23, 2019).  Therefore, the court construes Barth's § 2255 petition to raise each of the four claims as ineffective assistance of counsel claims but not to raise a claim of ineffective assistance of counsel for failure to appeal those issues.

A.  Claim 1 - Offense Level Increase

Barth argues that his offense level was improperly based on drug quantities that were calculated by including the drug equivalents of gold, jewelry, and cash seized from his home. He also challenges the enhancement for reckless endangerment when he drove toward an officer while trying to flee and by leaving fentanyl in the area when he escaped. He contends that his counsel was ineffective for failing to object to consideration of those matters for purposes of his sentence.[4]

Barth argues that the drug quantities considered for purposes of sentencing were core elements of the crime that had to be charged and proven to a jury beyond a reasonable doubt.[5] He also argues that his actions that caused an enhancement for reckless endangerment had to be charged and proven to a jury beyond a reasonable doubt. He contends that under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013), those matters could not be considered for sentencing because they were not facts found by a jury. He alleges that his counsel was ineffective for failing to raise

---

[4] At sentencing, the defense agreed that his conduct constituted reckless endangerment under U.S.S.G. § 3C1.2.

[5] Barth pleaded guilty to possession with the intent to distribute 400 grams of fentanyl and acknowledged that the penalties provided by 21 U.S.C. § 841(b)(1)(vi) applied to all three of his offenses.

7

those issues.  The government responds, stating that any such argument would have been frivolous.

When the prison term imposed is not longer than the statutory maximum, drug quantities found by a preponderance of the evidence are constitutionally permissible.  United States v. Zapata, 589 F.3d 475, 483 (1st Cir. 2009) (construing Apprendi); see also United States v. Berrios-Miranda, 919 F.3d 76, 80 (1st Cir. 2019) (explaining evidentiary bases for sentencing).  A sentencing enhancement for reckless endangerment is properly based on facts that are found by a preponderance of the evidence.[6]  United States v. Banks, 490 Fed. Appx. 484, 485 (3d Cir. 2014).  In addition, "factual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in Allene."  United States v. Ramirez-Negron, 751 F.3d 42, 48 (1st Cir. 2014).

Therefore, the advisory Guideline sentence imposed on Barth complied with the applicable legal standards.  As a result, his

---

[6] Barth does not dispute the facts that the enhancement was based on, and, in fact, he agreed that he fled from being arrested and left fingers of fentanyl in the area after abandoning his car.  See United States v. Dennings, 922 F.3d 232, 237 & n.3 (4th Cir. 2019).

8

counsel's failure to object on the grounds Barth raises did not fall below an objective standard of reasonableness.

B.  Claim 2 – Discovery

Barth charges that the government withheld impeachment and exculpatory evidence that it should have produced within fourteen days after his arraignment.  He alleges that the evidence concerned government witnesses that he identifies as Dave Fagan, Evil, and Mike Veinot.  The evidence that he cites is that Fagan was involved in a "massive drug ring," Evil would have testimony and statements about "the year of 2015," and Veinot would have testimony and statements "concerning the years of 2012-2016, FBI FD 302's & 209's with inserts, DEA 6's & 7's." Doc. no. 1, at 9.  Barth contends that his counsel was ineffective in failing to object to the government's nondisclosure of that information.

In response, the government points out that Barth has not shown that any withheld discovery caused him prejudice.  The government also notes that the evidence he cites appears to be impeachment evidence, and that Barth was not entitled to impeachment evidence before he pleaded guilty.

For purposes of an ineffective assistance of counsel claim in the context of a guilty plea, the petitioner must show both that his counsel's representation was not objectively reasonable

9

and that, but for the deficient representation, there is a reasonable probability that he would not have pleaded guilty. United States v. Luis Rivera-Cruz, 878 F.3d 404, 410 (1st Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "A court should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preference." Lee v. United States. 137 S. Ct. 1958, 1967 (2017).

1. Witness Discovery

Barth provides little information about the allegedly withheld discovery. He does not show or explain how the cited information is exculpatory, and instead, it seems that the information was impeachment evidence. As the government points out, the government had no obligation to disclose impeachment evidence to Barth before he pleaded guilty.[7] See United States v. Ruiz, 536 U.S. 622, 633 (2002).

---

[7] Barth cites local rules from the District of Massachusetts, for 1990 and 1986. Those rules do not apply in this district.

Therefore, Barth has not shown that failure to object to the alleged lack of discovery was objectively unreasonable.

### 2. Prejudice

Even if Barth had established the first step of this claim, he has not shown prejudice. In his reply, Barth repetitively states that the result of the proceedings would have been different, but he provides no evidence or developed argument to show that he would not have pleaded guilty if he had had the discovery he cites about Fagan, Evil, and Veinot. He conclusory statements of the standard does not provide the required showing. Therefore, Barth has not met the prejudice prong of the ineffective assistance of counsel test.

## C. Claim 3 – Sentencing Manipulation

Barth argues that his counsel was constitutionally ineffective because he did not argue that the government improperly manipulated the drug sales in order to increase his sentence. He contends that the small amounts of fentanyl sold in the first two encounters would have kept his sentence within a range of 0-60 months but the much larger attempted third sale caused him to be subject to the greater sentence of ten years to life. He argues that the government could have arrested him before the third attempted sale but wanted to enlarge the scale

of his crime with the third sale for purposes of a longer sentence.

"Sentencing factor manipulation occurs where government agents have improperly enlarged the scope of scale of a crime." United States v. Rivera-Ruperto, 852 F.3d 1, 14 (1st Cir. 2017). If a defendant proves that misconduct, the court may impose a sentence below the statutory minimum or depart from the sentencing guidelines range. Id.; United States v. Montoya, 62 F.3d 1, 3 (1st Cir. 1995). That relief is available, however, only in extreme and unusual cases that involve "outrageous or intolerable pressure by the government or illegitimate motive on the part of the agents." Rivera-Ruperto, 852 F.3d at 15; see also United States v. Navedo, 781 F.3d 563, 569-70 (1st Cir. 2015) (considering sentence manipulation claim in support of a downward variance).

As the government points out, defense counsel argued for a downward variance based on a sentence manipulation theory. The court rejected that argument. Barth has not shown that an argument for a sentence below the statutory minimum, based on a sentence manipulation theory, would have been more successful. Therefore, he has not shown that counsel's argument was objectively unreasonable or that there is a reasonable probability of a different outcome.

D.  Claim 4 – Mitigating Role

Barth contends that his counsel was ineffective for failing to argue, under U.S.S.G. § 3B1.2, for a reduction in his offense level based on his minimal or minor role in the crimes charged.[8] Despite Barth's attempt to portray himself as a "mule" in someone else's drug operation, that is contrary to the facts of this case.[9] Barth, like most drug dealers, had a source from whom he bought the drugs that he then sold to the confidential source. Having a source for his drug supply does not make Barth a minimal or minor participant in his own drug dealing operation.

Barth has not shown that he meets any of the factors for a minimal or minor participant under § 3B1.2. Therefore, his counsel did not provide ineffective assistance of counsel in failing to argue for a decrease in offense level based on a mitigating role.

---

[8] Barth makes a long argument about the retroactive application of Amendment 794, which added a five-factor test to the application note for U.S.S.G. § 3B1.2. His argument is irrelevant, however, because the amended guidelines were used for sentencing.

[9] A drug mule is simply a courier in a much broader drug conspiracy or operation and does not participate in the drug sales or negotiations, which are conducted by others. United States v. Quinones-Medina, 553 F.3d 19, 22-23 (1st Cir. 2009). Barth admittedly made the drug sales to the undercover source and identifies no one else who ran the drug operation.

13

Conclusion

For the foregoing reasons, Barth's petition for relief under § 2255 is denied.

The clerk of court shall enter judgment accordingly and close the case.

Because Barth did not make a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 30, 2019

cc:  Anthony Barth, pro se
     Seth R. Aframe, Esq.